UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETRA SCOTT,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>    Defendant. | 1:15-cv-1831-GSA<br><br>**ORDER AFFIRMING THE AGENCY'S DENIAL OF BENEFITS**<br><br>(Doc. 18) |

**I.  INTRODUCTION**

    Plaintiff Petra Scott ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Supplemental Security Insurance ("SSI") benefits pursuant to Title XVI of the Social Security Act. (Docs. 1 and 14). The Commissioner filed a Motion for Summary Judgment in opposition. (Doc. 18).  Plaintiff filed a reply. (Doc. 19).  The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin,

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill is now the acting Commissioner of Social Security.

1

United States Magistrate Judge.[2] After reviewing the administrative record and the pleadings, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's appeal is denied and the Commissioner's Cross-Motion for Summary Judgment is granted. (Doc. 18).

## II.     BACKGROUND AND PRIOR PROCEEDINGS[3]

Plaintiff filed application for SSI on September 20, 2013, alleging a disability beginning May 30, 2013. AR 28; 180. Her application was denied initially on January 28, 2014 and on reconsideration on April 18, 2014. AR 28; 114-119; 123-127. Plaintiff requested a hearing before an administrative law judge ("ALJ"). AR 130-132. ALJ Katherine Loo conducted a hearing on April 22, 2015 (AR47-88), and published an unfavorable decision on June 30, 2015. AR 28-39. Plaintiff filed an appeal and the Appeals Council denied the request for review, rendering the order the final decision of the Commissioner. AR 1-3.

## III.    ISSUES FOR JUDICIAL REVIEW

Plaintiff challenges the ALJ's credibility determination on the basis that the ALJ failed to provide clear and convincing reasons to reject her testimony. (Doc. 14, pgs. 2-9; Doc. 19, pgs. 2-5). She argues that the case should be remanded for a calculation of benefits, or in the alternative, that the case be remanded for further proceedings. (Doc. 14, pg. 9; Doc. 19, pg. 5). The Commissioner contends that the ALJ gave sufficient reasons to find Plaintiff's testimony less than fully credible and that the decision is supported by substantial evidence. (Doc. 18, pgs. 7-12).

## IV.    PLAINTIFF'S TESTIMONY

Plaintiff completed a function report dated October 16, 2013. AR 212. She indicated that she is in constant pain and takes pain medication which makes her sleepy and constipated. AR 212; 219. She spends each day doing exercises to stretch her back, watching television, feeding her dogs, and sleeping. AR 213. She cares for her dogs by feeding them, giving them water, and opening the back door for them. AR 213. She also prepares her own meals which are usually cold cereal or sandwiches. AR 214. She vacuums for three minutes weekly and cleans the toilet and

---

[2] The parties have consented to magistrate judge jurisdiction. (Docs. 9 and 21).
[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

sinks for two minutes weekly. AR 214. Plaintiff reported that she does not do yard work because they had a gardener. AR 215. However, she goes grocery shopping once a week, loves reading, sews as a hobby, and goes out about twice a week. AR 215-217. Plaintiff reported that she spends time with others on the phone and that her sister visits occasionally, but she only goes out about twice a week. AR 215-216. She follows written and spoken instructions well and gets along well with authority figures. AR 217-218. She can deal with stress and is able to handle changes in routine. AR 218. She is only able to stand for a short period of time and can walk around the block. AR 219. She has difficulty completing tasks because she gets tired and things are too heavy. AR 219.

Plaintiff also testified before the ALJ at a hearing on April 22, 2015. AR 45-88. She noted she has an associate's degree in health care. AR 51. She last worked in 2004 as an underwriting service assistant but left that position because she was not able to sit for long periods of time. AR 53. She currently is unable to work because of her back pain and because her medication makes her lethargic. AR 54. In the past, Plaintiff received six or eight epidural shots to relieve the pain but they were only effective for about a day or so, so she has not gotten one recently. AR 55. On an average day Plaintiff's pain is an eight on a ten point scale. The pain starts in her back and radiates down her right leg. When the pain moves into her leg (which occurs about once a month), her right foot goes numb. AR 70-71. She also suffers from migraine headaches about once a month which she treats with medication. AR 72.

Plaintiff has been seeing Dr. Gordon, her primary care doctor, every two weeks for a couple of years and receives shots in her hip to relieve her back pain. AR 56-57. Surgery has been recommended for her back but she has not received the necessary authorization from her insurance company so she has not had the surgery. AR 56. She is currently taking M.S. Contin and Norco four times a day and Motrin as needed. She also has suffered from depression for about three years and has difficulty sleeping at night. She takes Cymbalta, Seroquel, and Resterol (occasionally) to treat the depression and insomnia. AR 59-60. She also takes thyroid medication because her thyroid was removed in 2005. AR 57-58.

In addition to her primary care physician, Plaintiff also sees Dr. Fisher, a pain management

3

specialist every two months. AR 60. She participated in physical therapy about a year and a half ago but it did not help. AR 60. She does stretching exercises in the morning if her daughter is home to help her off the floor. AR 61. She has a TENS unit that she wears for about six hours a day once a week. She also occasionally wears a back brace, but it is too constricting so she does not wear it often. AR 61-62.

Plaintiff's days are spent watching television and playing computer games on her Kindle. AR 63. She tries to go to church on Sundays but it is difficult because the pews are really hard to sit in. AR 64. Plaintiff occasionally goes shopping at the mall or grocery store with her daughter but she usually "poops out" and sits on a bench. AR 64. She pushes the cart and her daughter places the items to be purchased in the cart. AR 65. Plaintiff can go to the store by herself to get an item, but she generally does not go alone - her medications make her drowsy and she chooses not to drive because the vibrations hurt her back. AR 77. She only drives her car short distances about once every two weeks to Dr. Gordon's office which is approximately four minutes from her house. AR 78.

By way of daily activities, Plaintiff can vacuum, although it is "tough," and she hand washes dishes at the sink for short periods of time. AR 65. She is able to put clothes in the washing machine and fold them once they are out of the dryer, however, her daughter has to pull the clothes out of the washer and the dryer because Plaintiff is unable to bend down. AR 65-66. Plaintiff further testified that she took care of a family friend full-time in November 2013 which entailed sitting and watching TV all day. AR 67-68. She left the position in May 2013 because the friend fell down and she needed to be lifted which was more care than Plaintiff was able to provide. AR 68.

Plaintiff stated that she is able to sit for ten minutes for a total of an hour each day. AR 73-74. She can also stand for about fifteen minutes at a time for a total of an hour each day. AR 74. Sitting is easier than standing. AR 74. She can walk a block and can walk up a flight of stairs if she has help. AR 75. She is able to lift and carry about ten pounds but her doctors have not given her any restrictions. AR 75. She is able to lift her ten pound dog off of a counter but not off the floor. AR 75-76.

4

## V. THE MEDICAL RECORD

In May 2012, the medical records note that Ms. Scott was experiencing chronic low back pain. An MRI of the lumbar spine showed left paracentral disc protrusion at L4-L5 measuring 3mm at L3-4, a disc measuring 3mm, and at L5-S1 a 4mm disc protrusion. AR 302. Increased pain and numbness on the right lower extremity was also noted. Plaintiff's pain was a six to seven on a ten point scale and she described the pain as a sharp dull aching, coupled with a pins and needles sensation. AR 302.

In June 2012, an MRI showed lumbar spondylosis, but no significant central canal stenosis. Partial disc dessication L3-L4 through L5-S1 was noted with mild to moderate narrowing disc space, right L4-L5 and posterior bulging disc/osteophyte, with the greatest at L4-L5. Endplate changes most likely degenerative and greatest at this level, with mild right and mild to moderate left foraminal stenosis in combination with facet hypertrophy. A small amount of facet fluid was noted suggesting mild L4-L5 facet capsulitis. AR 323.

Plaintiff was treated at the Pain Institute of Central California during 2012 for a pain consultation. She was diagnosed with lumbar radiculopathy, lower back pain, lumbar degenerative disc disease, myofascial pain syndrome, depression, and headaches. AR 300. During this time Plaintiff was prescribed pain medication which were 10-40% effective. 300; 301; 350. She also reported there were no side effects from the medication. *Id*.

Dr. Carmen Fisher, M.D., saw Plaintiff from September 2013 to November 2014, approximately once every two months. AR 305-307 [repeated at AR 336-38, 353-55]; AR 356-363; 378-379; 382-383. During this time period, Dr. Fisher reported that Plaintiff's gait and station were normal. AR 306; 357; 360; 363; 378-379; 382. Plaintiff also showed full (5/5) muscle strength and her sacroiliac joint was normal to palpation. *Id*. She was able to walk on her toes and her heels. *Id*. Her lower extremities were normal to inspection and palpation and she displayed normal range of motion, muscle strength and tone, and stability. *Id*. However, she also had positive straight leg tests and tenderness over her paraspinal muscles during this period. AR 319; 325-326; 337; 353; 382.

In 2012, she was experiencing pain and complained that her medications were not

working. AR 303. Her pain continued to increase in 2013 when doing an activity or when it was cold. Her pain ranged from six to seven on a ten point scale. AR 325; 328; 331; 333; 336; 356; 380. In February 2013, Plaintiff received an epidural that helped the pain, and she was happy with the results. AR 298; 328; 346. She had another epidural in August 2013 with little or no decrease in pain. AR 336; 348-349. Plaintiff waited a few months before receiving another epidural injection, and instead received a pain shot in Dr. Fisher's office in September. AR 337. She received another epidural in December 2013. AR 369. After the shot, it was noted that Plaintiff was still experiencing the same pain in January and February 2014. AR 359; 400. In March 2014, she received a referral for a neurosurgeon to address her back situation. AR 362. Authorization for surgery was obtained, although Plaintiff did not make her appointment due to bible study in March 2014 and February 19, 2015. AR 362; 378. She also previously did not want to have surgery in July, September and November 2013. AR 295; 305; 333; 356.

On January 6, 2014, state agency doctor R. Betcher, M.D., reviewed the record. AR 89-98. He opined that Plaintiff could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds. AR 95. Dr. Betcher further opined that Plaintiff could sit, stand, or walk about six hours in an eight-hour day and was unlimited in her ability to push, pull, and balance. AR 95-96. Dr. Betcher also opined that Plaintiff could frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds, stoop, kneel, crouch, and crawl. AR 95-96. The ALJ gave this decision the greatest weight. AR 36.

On April 15, 2014, state agency doctor J. Bonner, M.D., also reviewed the record and opined that Plaintiff could occasionally lift and carry fifty pounds and frequently lift and carry twenty-five pounds; stand, walk, or sit for about six-hours in an eight-hour workday; frequently climb ramps and stairs and crouch; and was unlimited in her ability to push, pull, balance, and kneel. AR 106-107. Dr. Bonner also opined that Plaintiff could occasionally climb ladders, ropes, and scaffolds and could frequently crouch. AR 36; 107. The ALJ gave this opinion some weight. AR 36.

Dr. Uwe Jacobs, Ph.D. reviewed the record on April 17, 2014 and opined that Plaintiff's alleged psychiatric impairments were "overall non-severe." AR 105. The ALJ gave Plaintiff the

6

benefit of the doubt and considered some complaints of concentration and problems socializing in the RFC. AR 37.

From July 28, 2014 through February 26, 2015, Eural Gordon, nurse practitioner treated Plaintiff seven times. AR 465-66, 470, 472-473, 476-477. Each time, Plaintiff's back showed normal curvature and no tenderness in her spine. *Id*. She exhibited full range of motion and no deformities, edema, or erythema in her extremities. *Id*. Her extremities were also warm and well-perfused. *Id*. Her neurological examination was normal. *Id*.

Dr. Dale H. Van Kirk, M.D. completed an orthopedic evaluation on April 23, 2015. AR 445-449. He noted that Plaintiff had conservative treatment, including chiropractic treatment and physical therapy, and epidural injections. AR 445. Plaintiff stated that she could cook minimally, shower, and watch television. AR 446. She read for about six to eight hours a day. AR 446. Upon examination, Dr. Van Kirk noted that Plaintiff sat comfortably in the examination chair and could get up and out of the chair, walk around the examination room, and get on and off the table without difficulty. AR 446-447. Dr. Van Kirk did not detect any limp. AR 447. A Romberg test (for neurological function) was normal and tandem walking with one foot in front of the other was satisfactory. AR 447. Plaintiff could get up on her toes and heels but could only squat about halfway down. AR 447. She had no assistive device. AR 447. Plaintiff's straight leg raising test was negative. AR 448. Plaintiff's muscle strength was full (5/5) and her bulk and tone were normal. AR 448. Plaintiff's sensation was intact to light touch and pinprick. AR 448. Based on his examination, Dr. Van Kirk opined that Plaintiff should be able to stand and/or walk cumulatively for six hours out of an eight-hour day, and had no limitations in sitting. AR 448. Dr. Van Kirk also opined that Plaintiff could lift and carry twenty pounds frequently and fifty pounds occasionally. AR 449. Plaintiff was limited to only occasional postural activities and to no extremely cold or damp environments, but there were no manipulative limitations. AR 448-49. The ALJ gave this opinion less weight. AR 35.

On March 4, 2015, Ms. Gordon, a physician's assistant, completed a medical source statement. She opined that Plaintiff could only sit for fifteen minutes at a time and stand/walk for five minutes at time. She is unable to sit or stand/walk for an hour in an eight hour day and would

require unscheduled breaks in an eight hour day. She could occasionally lift up to ten pounds and would be absent from work more than four times a month. AR 430-431. The ALJ gave this opinion little weight. AR 36.

On March 9, 2015, Dr. Fischer, Ms. Scott's pain management doctor, wrote a letter stating that Ms. Scott had been under her care since May 25, 2012 for the treatment of chronic pain. She further stated that Ms. Scott was diagnosed with lumbar degenerative disc disease, lumbar radiculopathy, sciatica and chronic low back pain. Her condition was being treated with chronic narcotic medication and occasionally lumbar epidural steroid injections. AR 433. The ALJ gave this opinion little weight. AR 35.

## VI. THE DISABILITY DETERMINATION PROCESS

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 416.920(a). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 416.920 (a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 416.913.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-

determinable "severe" impairments; (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work; and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 416.920(a)(4).

## VII. SUMMARY OF THE ALJ'S FINDINGS

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 28-39. At step one, she found that Plaintiff had not engaged in substantial gainful activity since August 29, 2013, the application date. AR 30. At step two, the ALJ identified hypothyroidism, obesity, lumbar disc protrusions at L3-4, L4-5, and L5-S1, and depression as severe impairments. AR30. At step three, the ALJ determined that the severity of Plaintiff's impairments did not meet or exceed any of the listed impairments. AR 31-32.

Based on a review of the entire record, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 CFR § 404.967 (b). Specifically, the ALJ found that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk for six hours, and sit for six hours. She could also frequently climb ramps and stairs and occasionally crawl, stoop, and crouch; however, she should avoid exposure to working at heights, around hazardous machinery and cannot climb ladders, ropes, or scaffolds. She could maintain simple, routine, tasks, and maintain attention and concentration for two-hour increments with normal breaks. AR 28-37. Given these limitations, the ALJ determined that Plaintiff could not perform her past work as an industrial painter and park manager. AR 37. However, the ALJ determined that Plaintiff could perform other jobs that existed in significant numbers in the national economy including an office helper, a sales attendant, and a storage facility rental clerk. AR 37-38.

## VII. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine

9

whether: (1) it is supported by substantial evidence; and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

**VIII. DISCUSSION**

**A. The ALJ Properly Discredited Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ's credibility determination was improper because the ALJ did not provide clear and convincing reasons to reject her testimony. (Doc. 14, pgs. 7-9. Doc. 19, pgs. 2-5). The Commissioner contends that the ALJ's credibility determination was proper and the decision is supported by substantial evidence.

A two-step analysis applies at the administrative level when considering a claimant's credibility. *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090, 1098 (9th Cir. 2014). First, the claimant must produce objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id.* If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his or her symptoms only if he or she makes specific findings and provides clear and convincing reasons for doing so. *Id.; Brown-Hunter v. Colvin,* 806 F.3d 487, 493 (9th Cir. 2015); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight.").[4] Factors an ALJ may consider include: 1) the

---

[4] Social Security Ruling 96-7p was superseded by Ruling 16-3p, effective March 28, 2016. *See* 2016 WL 1020935 (March 16, 2016) and 2016 WL 1131509 (March 24, 2016). In Ruling 16-3p, the SSA stated it would no longer use the term credibility when evaluating the intensity, persistence and limiting effects of a claimant's symptoms. 2016 WL 1020935, at *14167. It is unclear whether this new rule applies to cases completed prior to the March 28, 2016 effective date. Currently, only the Seventh Circuit has issued a published opinion, applying Ruling 16-3p retroactively. See *Cole v. Colvin*, 831 F.3d 411 (7th Cir. 2016). But even if the Court were to apply Ruling 16-3p retroactively, the ALJ's symptom evaluation remains unchanged. Ruling 16-3p changes are not substantive as it

applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. *See Thomas v. Barnhart*, 278 F. 3d at 958-959; *Light v. Social Security Administration*, 119 F. 3d 789, 792 (9th Cir. 1997), *see also* 20 C.F.R. § 404.1529(c).

In this case, the ALJ noted that Plaintiff produced objective medical evidence of her condition but the Plaintiff's allegations concerning the intensity, persistence and limiting effects of her symptoms were less than fully credible. AR 33-34. This finding satisfied step one of the credibility analysis. *Smolen v. Chater*, 80 F.3d 1281-82 (9th Cir. 1996).

As noted above, because the ALJ did not find that Plaintiff was malingering, she was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *Brown – Hunter*, 806 F. 3d at 493; *Smolen*, 80 F.3d at 1283-84; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his or her symptoms solely because they are unsupported by medical evidence. *Bunnell v. Sullivan,* 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7. Moreover, general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Brown-Hunter*, 806 F. 3d at 493.

When discrediting Plaintiff's credibility, the ALJ found that Plaintiff's allegations regarding the severity of the symptoms were greater than expected given the objective medical evidence. AR 34. In doing so, the ALJ gave an extensive review of the medical evidence and properly weighed the medical opinions.[5] AR 34-37. She also noted that Plaintiff's treatment was conservative in nature. AR 34. For example, the ALJ indicated that although Plaintiff received

---

relates to this case. *See Mendenhall v. Colvin*, 2016 WL 4250214, at *3 (C.D. Ill. Aug. 10, 2016) (No. 3:14-CV-3389) ("SSR 96-7p and SSR 16-3p are substantially similar. Rule 16-3p affects only the second step of the method by which symptoms are evaluated.)

[5] Plaintiff has not challenged the reasons the ALJ gave for accepting or rejecting the various medical opinions.

11

physical therapy and epidural injections, she declined surgery for her back pain several times. AR 34-35. This finding is supported by the record. Plaintiff received some relief from epidural shots in the beginning and less relief as time went on. AR 298; 328; 246; 336; 348-349. However, despite allegations of increased pain, Plaintiff did not want surgery and missed several appointments to see a doctor after the surgery was authorized. AR 295; 305; 333; 356; 362; 378. Moreover, the ALJ correctly noted that although Plaintiff received medications, she never sought out any type of psychological treatment despite complaining of depression for at least three years. AR 34. *Chaudhry v. Astrue*, 885 F.3d 661, 672 (9th Cir. 2012) (The ALJ may consider an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" in discrediting a claimant's credibility); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (citation omitted) ("[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated….").

Moreover, the ALJ also noted that Plaintiff's function report, as well as her hearing testimony indicated she experienced side effects from her medications. However, the medical records do not support this contention. AR 300; 301; 350 (Plaintiff reporting no side effects because of her medication). Finally, the ALJ found that Plaintiff's daily activities which included vacuuming, preparing simple meals, washing sinks, and attending church (AR 64-68; 213-215) suggested she was involved in a somewhat normal level of daily activity and interaction which are consistent with obtaining and maintaining employment. AR 33-36. These are clear and convincing reasons to reject Plaintiff's testimony. *See Thomas v. Barnhart*, 278 at 958-959; *see also* 20 C.F.R. § 416.1529(c) (An ALJ can consider inconsistencies either in the claimant's testimony or between the claimant's testimony and her conduct; the claimant's daily activities; and the claimant's work record when assessing credibility); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The Court notes however that the ALJ erred in concluding that Plaintiff had good response to epidural injections. Although Plaintiff experienced some relief from those injections initially, later epidurals were not effective. AR 298; 328; 246; 336; 348-349. However, this error

was harmless because as outlined above, the ALJ found other clear and convincing reasons to reject Plaintiff's testimony. *Carmickle v. CSS*, 533 F.3d 1155, 1162 (9th Cir. 2006); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir.2006); *Stout v. CSS*, 454 F.3d 1050, 1055 (An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination.").

Given the above, the ALJ provided clear and convincing reasons that are supported by substantial evidence to conclude Plaintiff's subjective symptom testimony was not credible. Here, the ALJ clearly identified what testimony she found not credible and what evidence undermined Plaintiff's complaints. *Brown-Hunter*, 806 F. 3d at 493; *Lester*, 81 F.3d at 834. It is not the role of the Court to re-determine Plaintiff's credibility de novo. If the ALJ's finding is supported by substantial evidence, the Court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, as it was here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). Accordingly, the ALJ's credibility determination was proper.

**X.    CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal and grants the Commissioner's Cross Motion for Summary Judgment. (Doc. 18). The Clerk of this Court shall enter judgment in favor of Nancy A. Berryhill, Commissioner of Social Security, and against Plaintiff Petra Scott. The Clerk of the Court is directed to close this action.

IT IS SO ORDERED.

Dated:  **April 28, 2017**                    **/s/ Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE

14